**Marie R. BURKE, Executor of the Estate of Leo V. Burke, deceased, and individually and on behalf of the heirs of Leo V. Burke, deceased, Plaintiff,**

v.

**AID INSURANCE COMPANY, Defendant.**

**Mildred M. MEIER, Executor of the Estate of Meinard Meier, deceased, and individually and on behalf of the heirs of Meinard Meier, deceased, Plaintiff,**

v.

**AID INSURANCE COMPANY, Defendant.**

Civ. A. Nos. 78–1327, 78–1328.

United States District Court, D. Kansas.

Jan. 18, 1980.

---

Gerald W. Scott of Matlack, Foote, Scott, Joseph & Wilkinson, Wichita, Kan., for plaintiff.

Thomas J. Berscheidt of Ward & Berscheidt, Great Bend, Kan., for Aid Ins. Co.

Christopher Randall of Turner & Boisseau, Wichita, Kan., for Nat. Farmers Union Property & Cas. Co.

## MEMORANDUM AND ORDER

THEIS, Chief Judge.

These cases come now for decision on plaintiffs' motions for partial summary judgment. The disputes underlying these cases stem from the same traffic accident and raise identical questions of law.

On May 24, 1975, Leo V. Burke, Meinard M. Meier and James Meier, Meinard Meier's minor son, were traveling in an automobile owned by Hodgeman County Highway Department, and insured by the defendant, Aid Insurance Company. Meinard Meier was driving. The automobile was struck by another vehicle. That accident was the sole fault of the second vehicle. That car was driven by a minor, and the minor's father was in the second car. There is no dispute that the accident was the result of the negligence of the minor driver or the negligence of the minor's father. Both of these individuals were admittedly uninsured motorists.

The car in which Leo V. Burke, Meinard M. Meier, and James Meier were traveling was one of a fleet of automobiles owned by Hodgeman County, Kansas, a governmental body, insured under a policy containing uninsured motorist coverage. The policy limits of this coverage was $15,000 per person, to a maximum of $30,000 per accident. A total of 44 vehicles were covered under this policy with similar coverage.

Leo V. Burke, Meinard M. Meier and James Meier were all severely injured as a result of that accident. Leo Burke incurred medical expenses in a sum in excess of $15,000. Meinard Meier incurred medical expenses in a sum exceeding $7,000. James Meier settled his claim based on the uninsured motorist coverage for $8,500, and is not of concern in this suit.

Mildred M. Meier and Marie R. Burke, as executors for the estates of Meinard Meier and Leo Burke, respectively, are suing to recover the sum of $750,000 for the damages for the injuries and wrongful death of each decedent, of which amount they claim $600,000 is due under the uninsured motorist insurance policy coverage. In this present motion the plaintiffs are seeking summary judgment on the issue of "stacking" the insurance policies so as to increase the policy limits, and are also seeking a determination as to the payment of the seemingly undisputed liability of the company and are seeking appropriate attorney fees and interest.

In considering a motion for summary judgment, the Court must examine all the evidence in the light most favorable to the non-moving party. *Mogle v. Sevier County School District*, 540 F.2d 478, 482 (10th Cir. 1976), cert. denied, 429 U.S. 1121,

97 S.Ct. 1157, 51 L.Ed.2d 572 (1977); *Frey v. Frankel*, 361 F.2d 437, 442 (10th Cir. 1966). The burden is upon the moving party to prove his entitlement to summary judgment beyond a reasonable doubt. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027, 1037 (10th Cir. 1978); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33, 36 (10th Cir. 1975). Where different inferences can be drawn, the case is not one for summary judgment. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Where a party has supported a sufficient summary judgment motion with evidence, the party opposing it must respond with specific facts showing the existence of genuine issues of material fact for trial. *Perington Wholesale, Inc. v. Burger King Corp.*, No. 77-1877 (10th Cir. 1979); *Stevens v. Barnard*, 512 F.2d 876, 878 (10th Cir. 1975). Mere conclusory allegations do not serve to establish a genuine issue of material fact. *Murphy v. Hallmark Cards, Inc.*, No. 78-4138 (D.Kan. filed 2-16-79). "A trial court need 'not look with indulgence upon a party who has presented neither evidentiary material in opposition nor any reason for his failure to do so.'" *Trustees of Kansas Building Trades Open End Health and Welfare Fund v. Kane, Bills & Bender Construction Company, Inc.*, No. 75-143-C5 (D.Kan. filed 11-14-79), quoting 6 Moore's *Federal Practice* ¶ 65.23, p. 1391.

In support of plaintiffs' motion for summary judgment, plaintiffs have annexed to their motions a number of documents. These are drawn from a number of sources, including the defendant's files. The authenticity of these documents seems to have been stipulated. The defendant submitted no evidence in resisting the motions. This Court's role in these summary judgment motions is to determine if the plaintiffs have adequately supported by documentation their motions for summary judgment, and whether the arguments of the defendant in resisting the motions raise reasonable inferences from the evidence which would create a genuine issue of material fact. The major bone of contention which this Court must decide is not a factual issue, but rather is purely a legal issue.

## I. STACKING OF INSURANCE POLICIES

The plaintiffs in these two suits are seeking to increase the maximum policy limits to a total of $660,000 per person, instead of the coverage of $15,000 per person which the defendant asserts is proper. The plaintiffs argue that the insurance policy covered forty-four cars. A separate consideration was paid for uninsured motorist coverage for each vehicle. In effect, forty-four separate insurance policies covered the forty-four vehicles. The plaintiffs then claim that the policy definition of "insured" is such that the plaintiffs' decedents were included in the coverage of all of these policies. The plaintiffs' claim that the coverage afforded by each of these policies should be aggregated to cover the plaintiffs' decedents for injuries, up to the extent of those injuries, or to the maximum of $600,000 (44 × 15,000) per person.

The defendant contends that this stacking should not be permitted.

The plaintiffs' position is not totally unjustified, in the light of precedential authority and an attorney's ever existent duty to apply the field of law and his ingenuity of thought to sustain his client's interest. Prior Kansas cases have allowed stacking in certain circumstances. The leading Kansas case in this area is *Sturdy v. Allied Mutual Ins. Co.*, 203 Kan. 783, 457 P.2d 34 (1969). In that case the Court allowed the plaintiff to aggregate the uninsured motorist insurance coverage on his two personal cars so as to permit recovery for injuries sustained while driving a motorcycle. A single policy covered his two automobiles, yet a separate premium was collected for each car for the uninsured motorist coverage. The Kansas court analyzed the coverage afforded under the policy and concluded that those policy limits could be stacked. See also, *Rossen v. Allied Mutual Ins. Co.*, 203 Kan. 795, 457 P.2d 42 (1969).

Stacking was also allowed in *Clayton v. Alliance Mutual Casualty Co.*, 212 Kan. 640, 512 P.2d 507 (1973), and *Welch v. Hartford*

*Casualty Ins. Co.*, 221 Kan. 344, 559 P.2d 362 (1977). Both of those cases involved plaintiffs who were guests in cars owned and insured by others at the time of the accident. The plaintiffs in those cases were allowed to stack uninsured motorist coverage which they personally had, on top of the host's uninsured motorist coverage, up to the extent of their injuries.

Based on these cases, the plaintiffs argue that stacking should be permitted. The defendant argues that these cases are all distinguishable. All of the Kansas cases dealt with attempts by policy holders to aggregate insurance they had purchased for themselves or insurance which was purchased for their benefit as family members. No case dealt with a "guest" attempting to aggregate his "host's" insurance. The defendant urges that various "classes" of insureds should be recognized. The defendant urges that individuals covered, whether or not riding in a specified car, should be treated differently than individuals who are covered solely because of their presence in a car.

This Court believes that the defendant's position is solidly based on Kansas law and is well supported by the reasoning underlying the Kansas cases allowing stacking.

The Kansas Supreme Court recognized the distinction between a named insured who is covered in all circumstances and individuals who are covered only while occupying that vehicle, in *Sturdy v. Allied Mutual Ins. Co.*, supra. In that case, the Kansas court closely examined the policy and sought to determine its intended meaning. In this regard, the Court noted:

> "[t]o be insured, the latter [i. e. people insured by their presence in the vehicle] must actually be occupants of an insured vehicle. Their coverage is tied to and limited to actual occupancy of a particular automobile. This is not true of the named insured. His coverage . . . is not tied to or limited by occupancy of an automobile." 203 Kan. at 791, 457 P.2d at 480.

The Court noted that the named insured possesses a "broad reservoir of coverage" because that coverage is not tied to occupancy of the vehicle. By paying two premiums, the insured purchased two "broad reservoirs" of coverage. This overlapping protection allowed the insured to stack the policies.

Individuals who are covered only while they are occupying a vehicle do not have the same "broad reservoir of coverage." The payment of a premium to cover a second vehicle creates no new "broad reservoir" upon which guests in the first vehicle could draw. The reasoning which led the Kansas Supreme Court to allow stacking by a named insured irresistibly causes this Court to conclude that stacking should not be allowed under these circumstances. See *Ohio Cas. Ins. Co. v. Stanfield*, 581 S.W.2d 555 (Ky.1979); *Lambert v. Liberty Mutual Ins. Co.*, 331 So.2d 260 (Ala.1976); *Auto-Owners Insurance Co. v. Traviss*, 72 Mich. App. 66, 248 N.W.2d 673 (1976).

■ The plaintiffs' attempt to distinguish *Sturdy* based on the fact that *Sturdy* was decided prior to the passage of the Kansas Uninsured Motorist Insurance Statute, K.S.A. 40-284, is unpersuasive. The statute in no way addresses the issue of stacking, nor does it require equal treatment of all classes of insureds. The case upon which plaintiffs rely to justify this construction of the statute is *Forrester v. State Farm Mutual Automobile Ins. Co.*, 213 Kan. 442, 517 P.2d 173 (1973). That case holds only that the term "insured" under the statute is meant to include individuals defined as "insured" under the insurance policy. No fair reading of that case would lead to the conclusion that division of the insureds into classes is improper, or the conclusion that all classes of persons who are insured must be treated identically.

The policy definition of insured affords the plaintiffs no comfort. The definition in the present policy is similar to the definition of insured under the policy considered in *Sturdy*. The present policy provides that "insured" means:

> "(1) the named insured as stated in the policy (herein also referred to as the 'principal named insured') and any

person designated as named insured in the schedule and, while residents of the same household, the spouse of any such named insured and relatives of either;

(2) any other person while occupying an insured automobile; and

(3) any person, with respect to damages he is entitled to recover because of bodily injury to which this endorsement applies sustained by an insured under (1) or (2) above."

The plaintiffs have cited three decisions from other states which support their position. These decisions are: *Blocker v. Aetna Casualty & Surety Co.*, 232 Pa.Super. 111, 332 A.2d 476 (1975); *Allstate Insurance Co. v. Anderson*, 87 Mich.App. 539, 274 N.W.2d 66 (1978); and *Barbin v. United States Fidelity and Guaranty Co.*, 315 So.2d 754 (La. 1975). This Court finds that the reasoning in those decisions is not persuasive. In fact, it is not at all clear whether those cases would demand that plaintiffs prevail in two of the three jurisdictions in which those cases were decided. In *Briley v. Falati*, 367 So.2d 1227 (La.App.1979), the appellate court distinguished *Barbin* and held against the individuals who sought to stack insurance policies. The facts of *Briley* seem much closer to those of the present case than the facts of *Barbin*. In *Auto-Owners Insurance Co. v. Traviss*, supra, a case factually close to the present one, the Court recognized the differences in classes of insureds and refused to allow stacking of insurance policies. It is unclear which decision would be persuasive if this case arose in Michigan.

The majority of jurisdictions which allow some stacking of insurance policies, and have decided this issue, seem to recognize a distinction as to classes of insureds and do not allow individuals insured solely because of their presence in an insured automobile to aggregate insurance under the policy covering that automobile. In addition to cases previously cited, see *Nationwide Mutual Ins. Co. v. United Services Auto*, 359 So.2d 380 (Ala.App.1979); *Travelers Insurance Co. v. P. A. C.*, 337 So.2d 397 (Fla.App.

1976). This Court has been unable to find any case allowing the stacking of a policy covering a fleet of cars. The course charted by the other jurisdictions seems the one destined to be followed by Kansas.

There is another compelling reason for forbidding the stacking of insurance policies as sought in this case. The insurance policy provides:

"6. Limits of Liability: Regardless of the number of (1) persons or organizations who are insured under this policy, (2) persons who sustain bodily injury, (3) claims made or suits brought on account of bodily injury, (4) *automobiles or trailers to which this policy applies*, or (5) premiums paid or payable, (a) the limit of liability stated in the schedule as applicable to each person is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provisions respecting each person, the limit of liability stated in the schedule as applicable to 'each accident' is the total limit of the company's liability for all damages, including damage for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident."

This provision seems to be a clear and unambiguous indication that the insurance provided under the policy could not be stacked. No argument has been made that this limitation should not be given effect. See *Barnes v. Government Employees Ins. Co.*, 142 Ga.App. 377, 236 S.E.2d 9, 12 (Ga. App.1977); *Royal Indemnity Co. v. Blakely*, 372 Mass. 86, 360 N.E.2d 864, 866 (1977).

Therefore, this Court believes as a matter of law, that the plaintiffs may not aggregate the insurance covering the car fleet.

## II. LIABILITY FOR THE POLICY LIMITS AND INTEREST

The parties seem to agree that the plaintiffs are entitled to an aggregate sum of $21,500, which is the single accident limit of

$30,000, less the settlement to James Meier of $8,500. The defendant has not denied that it is, or should be, liable to that extent.

■ The defendant claims, however, that the policy limit amounts of $15,000 for one claimant, and $6,500 for the second are not "due and owing" since: (1) plaintiffs have not requested the payment of the remaining policy limits, (2) plaintiffs have not filed a written proof of loss as required by the policy provisions. These conclusory allegations do not serve to establish a genuine issue of material fact. *Murphy v. Hallmark Cards, Inc.*, No. 78-4138 (D.Kan. filed 2–16–79). Only if the truth of these allegations could be inferred from the plaintiffs' evidence could they create a material issue of facts such as could defeat summary judgment.

■ The evidence in the record does not support the claim that the plaintiffs have not requested compensation in the amount of at least the available policy limits. Plaintiffs' exhibit "C" shows that as early as August 13, 1975, defendant knew that Leo Burke's medical expenses were in excess of $15,000. Plaintiffs' exhibit "C" shows that defendant knew that Meinard Meier required at least three operations on his leg. Defendant's file memorandum dated April 19, 1977, shows that defendant had copies of medical bills and drafts for payment of the expenses of Leo Burke. The exhibits submitted by the plaintiff show a continuing effort on the part of plaintiffs to obtain payment for the injuries sustained.

It cannot be inferred from the submitted evidence that the plaintiffs have not documented their claims. The record, as mentioned above, does contain information which would seem to indicate that the injured submitted to the defendant copies of bills for medical expenses.

The defendant's unsupported assertions in opposition to plaintiffs' claims are insufficient to defeat plaintiffs' showing. In light of defendant's admission that it is liable to the plaintiffs to the extent of $21,500, this Court sees no reason summary judgment should not issue against the defendant in the amount of $21,500.

■ This Court has recently had the opportunity to consider at some length the allowance of interest on insurance claims. See *General Equipment Co., Inc. v. Continental Insurance Co.*, No. 78–1148 (D.Kan. filed 11–26–79). After a review of the relevant Kansas cases, this Court concluded that Kansas allows recovery of prejudgment interest on liquidated claims. A claim is liquidated when both the amount due and the date due are fixed and certain. *First National Bank of Girard v. Bankers Dispatch Corp.*, 221 Kan. 528, 537, 562 P.2d 32 (1977). If the plaintiffs show that the defendant was liable for a sum certain at a specified date, they are entitled to recover interest.

■ The plaintiffs claim interest from September 29, 1975. The evidence in the record seems to support the plaintiff Marie Burke. Plaintiffs' exhibits "C," "D," and "E" tend to support the plaintiff and show that as of September 29, 1975, the defendant was aware that medical expenses exceeded $15,000, that fault for the accident was strictly the driver or occupants of the second vehicle, and that the second vehicle was indeed uninsured. Defendant's two arguments, as noted above, are not supported by the existing record. Defendant has not yet raised any defense which would justify this Court in withholding interest from the plaintiff Marie Burke from the date sought. See *State Farm Mutual Automobile Ins. Co. v. Bishop*, 329 So.2d 670, 672 (Miss.1976).

■ The plaintiff Mildred Meier, however, has not established a date certain from which interest should run. In the absence of this date, interest cannot be fixed. Summary judgment must be withheld from plaintiff Mildred Meier as it relates to the issue of interest. The parties should be able to agree on such a date.

### III. ATTORNEY FEES

■ The plaintiffs are also seeking summary judgment on the issue of attorney fees. K.S.A. 40–256 governs the allowance of attorney fees for wrongful refusal to pay and provides:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40–201 . . . if it appear[s] from the evidence that such company, society or exchange has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action . . . to be recovered and collected as a part of the costs . . . ."

With the entry of summary judgment against the defendant, this issue will become ripe for decision. The primary claim that defendant raises in opposition to attorney fees is the argument that "[n]o evidence is submitted for consideration wherein plaintiff specifically requested payment of the single policy limits afforded for uninsured motorist coverage by the defendant." It is unclear to the Court whether the defendant is arguing that the plaintiffs have not requested any payment, or whether plaintiffs have refused to limit their requests to the aggregate amount of $21,500. The former interpretation would probably constitute just cause for failure to pay, but this interpretation is foreclosed by the record which shows a continuing effort to obtain satisfaction. It is doubtful that the latter interpretation could constitute just cause. "The company cannot withhold an undisputed debt as leverage to obtain settlement of a disputed amount, and still claim that it was always ready and willing to pay the undisputed amount." *General Equipment Co. v. The Continental Insurance Co.*, supra.

Whether there was a refusal to pay, and whether the refusal to pay was "without just cause or excuse" are questions of fact. *Sloan v. Employers Casualty Ins. Co.*, 214 Kan. 443, 521 P.2d 249 (1974). The plaintiffs have submitted sufficient evidence to demonstrate that there was existing an undisputed loss, for which the defendant was admittedly liable. The defendant has submitted no evidence that it had just cause or excuse. Again, the defendant's conclusory allegations are inadequate. The Court sees no reason that summary judgment should not issue as to the question of liability of attorney fees. If a reasonable attorney's fee cannot be agreed upon between the parties, plaintiffs' counsel should submit affidavits concerning the time and value of legal services performed in establishing the amounts within the proper limits determined in this opinion, and excluding services spent in attempting to establish the "stacking" coverage, which has been denied.

## IV. CONCLUSION

The Court recognizes that the resolution of the issues raised in the motions as indicated in this order, effectively settles the controlling issues in the case. Because this issue is central to the plaintiffs' recovering any amount above that for which the defendant is admittedly liable, and in keeping with the Tenth Circuit requirements of a hearing prior to the entry of summary judgment, this Court believes a hearing is necessary on this motion. See *Dolese v. United States*, 541 F.2d 853 (10th Cir. 1976); and *Mustang Fuel Corp. v. Youngstown Sheet and Tube Co.*, supra. At that hearing, counsel should be prepared to offer any arguments, authorities, or evidence why the plaintiffs' motions for summary judgment should not be dealt with in the manner set out in this opinion. Defendant will have an opportunity to present any evidence which would indicate that a material dispute of fact remains unresolved.

The Court has also not decided the issue of how the insurance company's liability of $21,500 should be divided between the plaintiffs. The Court recognizes that both plaintiffs are represented by the same attorney, and it seems likely that the plaintiffs have arrived at an amicable division of this money. The Court would like enlightenment on this issue.

IT IS THEREFORE ORDERED that a hearing be scheduled in this matter on the 25th day of January, 1980, at 2:00 p. m.